UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOHN MURPHY,

                Plaintiff,

      - against -

ANDREW M. SAUL,[1] COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-1757 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff John Murphy commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 20, 22.) For the reasons set forth below, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

**I.    Procedural History**

On October 18, 2013, Plaintiff filed an application with the SSA for DIB, in which he alleged he had been disabled as of September 7, 2011. (Administrative Transcript ("Tr."), Dkt. 25,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

at 128.) His application was denied. (*Id*. at 79–82.) After requesting a hearing (*id*. at 83), Plaintiff appeared before Administrative Law Judge Patrick Kilgannon ("the ALJ") on May 7, 2015 (*id.* at 48). In a decision dated September 23, 2015, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at 43.) Specifically, the ALJ found that Plaintiff was capable of performing light work that did not include exposure to irritants like fumes, odors, dust, gases, and poorly ventilated areas. (*Id.* at 37.) On January 23, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1–5.) Thereafter, Plaintiff timely[2] filed the instant action.

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R.

---

[2] Section 405(g) provides that

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on January 28, 2017. Plaintiff filed the instant action on March 29, 2017—exactly 60 days later. (*See generally* Complaint, Dkt. 1.)

§ 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 7, 2011 and that Plaintiff suffered from the following severe impairments: "asthma, bilateral carpal tunnel syndrome (CTS), gastro esophageal reflux disease (GERD), herniated nucleus polposus[3]—cervical, osteoarthrosis of the knee, [and] lumbago."[4] (Tr. at 36.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 37.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[5] to perform "light work" as defined in

---

[3] A herniated nucleus polposus is also known as a herniated disc. *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 76 (N.D.N.Y. 2005)

[4] "[L]umbago is a term, albeit antiquated, to refer to 'pain in the lower (lumbar) portion of the back.'" *Ferguson v. Colvin*, No. 12-CV-0033 (MAT), 2014 WL 3894487, at *9 (W.D.N.Y. Aug. 8, 2014).

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

20 C.F.R. § 404.1567(b).[6] (*Id.* at 22–27.) Qualifying his RFC determination, the ALJ noted that Plaintiff "must avoid concentrated exposure to irritants such as fumes, odors, dust[,] gases[,] and poorly ventilated areas." (*Id.* at 37.)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a firefighter and construction equipment mechanic. (*Id.* at 42.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) mail clerk, which has an availability of 102,410 jobs; (2) furniture rental clerk, which has an availability of 432,650 jobs; and (3) messenger, which has an availability of 66,820 jobs. (Tr. at 43.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role

---

[6] According to the applicable regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

4

is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ assigned improper weight to the medical opinions of the consultative doctors in determining Plaintiff's RFC. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 21, at 17–22.) The Commissioner argues that the ALJ's RFC determination, based on the opinions of two consultative doctors, was supported by substantial evidence. (Defendant's Brief ("Def.'s Br."), Dkt. 23, at 18–21.)

**I.    Consultative Examiner Opinions**

"In general, 'a consulting physician's opinions or report should be given limited weight.'" *Adesina v. Astrue*, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports

ignore or give only passing consideration to subjective symptoms without stated reasons." *Cruz*, 912 F.2d at 13. In fact, "[t]he Second Circuit had made clear that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Miracolo v. Berryhill*, 286 F. Supp. 3d 476, 499–500 (E.D.N.Y. 2018) (quoting *Selian*, 708 F.3d at 419)). Likewise, "[a] consultative examiner's opinion may not constitute substantial evidence where the consultative examiner is not provided the plaintiff's treatment record or diagnostic studies, *i.e.*, the necessary background information." *Mauro King v. Berryhill*, 251 F. Supp. 3d 438, 444 (N.D.N.Y. 2017) (citing, *inter alia*, *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008)).

Here, the ALJ heavily relied on the opinions of two consultative physicians, Dr. Jerome Caiati and Dr. John Kwock. The ALJ afforded "great weight" to Dr. Caiati's opinion because

> Dr. Caiati's overall conclusion is based on a review of [Plaintiff's] extensive activities of daily living and the results of the consultative examination. Additionally, the medical evidence of record substantiates the consultant findings and as a medical consultant with the Administration, Dr. Caiati is certainly well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act. Accordingly, this opinion provides some understanding of [Plaintiff's] overall functioning and the degree to which his functioning is eroded and to which it remains intact . . . .

(Tr. at 41.) The ALJ's reliance on Dr. Caiati's opinion is problematic. Dr. Caiati examined Plaintiff at the request of the Commissioner. (*Id.* at 40.) Plaintiff asserts, and the Commissioner does not contest, that Dr. Caiati was not provided with Plaintiff's medical record as part of his examination. (Pl.'s Br., Dkt. 21, at 18 (noting "the failure of the agency to supply Dr. Caiati with a copy of the relevant records in [Plaintiff's] case"); Def.'s Br., Dkt. 23, at 19 (stating that "Dr. Caiati did not base his opinion on a review of the record but rather on his own examination findings"); *see also* Tr. at 41 (noting that Dr. Caiati's review is "based on a review of the claimant's extensive activities of daily living and the results of the consultative examination").) "With respect to consultative examinations, the relevant regulations require the SSA to 'give the examiner any

6

necessary background information about [a claimant's] condition.'" *Scott v. Comm'r of Soc. Sec.*, No. 16-CV-3261 (VEC) (SN), 2017 WL 1458773, at *2 (S.D.N.Y. Apr. 24, 2017) (quoting 20 C.F.R. § 404.1517). While the relevant regulations do not require that the consultative examiner "be provided with all of a claimant's medical records and history," *Johnson v. Colvin*, No. 13-CV-3745 (KAM), 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015), the Commissioner "should have provided [the consultative examiner] with Plaintiff's records that documented the history of his chief complaints. Without any of this information, [the consultative examiner]'s opinion alone cannot support the ALJ's RFC determination," *Mills v. Berryhill*, No. 15-CV-05502 (DLI), 2017 WL 1155782, at *10 (E.D.N.Y. Mar. 27, 2017) (citing *Burgess*, 537 F.3d at 132).

Here, Plaintiff's chief complaints include neck, arm, back, and knee pain, as well as asthma, carpel tunnel syndrome, and GERD. (Tr. at 38–39.) The record includes several medical tests such as a March 2011 MRI of Plaintiff's left knee, a June 2011 CT scan of Plaintiff's cervical spine, and December 2013 to February 2014 EMG/NCV studies (*id.* at 46–47) that would have been relevant to Plaintiff's complaints. Furthermore, it appears that Dr. Caiati was unclear about Plaintiff's complaints. (*Id.* at 326 (Dr. Caiati noting that Plaintiff's diagnosis for arm, back, and knee pain is "unclear").) Other documents in the record, such as various hospital records, office treatment records, and progress notes, would likely have clarified Dr. Caiati's understanding of Plaintiff's diagnoses. Accordingly, Dr. Caiati's opinion, reached without the benefit of "necessary background information," is insufficient to support the ALJ's RFC determination. *See Alessi v. Colvin*, No. 14-CV-7220 (WFK), 2015 WL 8481883, at *5–6 (E.D.N.Y. Dec. 9, 2015) ("[T]here is insufficient basis in the record to determine . . . [Plaintiff's RFC] especially because . . . the sole medical source whose functional assessment the ALJ gave 'great weight' to did not review the lumbar and cervical MRIs, which showed some abnormalities."); *Ingrassia v. Colvin*, 239 F. Supp.

3d 605, 625 (E.D.N.Y. 2017) (vacating ALJ's decision that rested on physician's opinion where "there [was] no evidence that [the physician] examined the [p]laintiff's . . . MRI"); *Scott*, 2017 WL 1458773, at *2 ("[S]everal courts in this circuit have found remand was necessary when a consulting physician was not provided with important diagnostic tests."); *see also Adesina*, 2014 WL 5380938, at *10 ("Considering that . . . a consulting examiner . . . [only] examined Plaintiff on one occasion and . . . only conducted the most basic of clinical analysis in evaluating Plaintiff, there was no basis to give [the consulting examiner's] opinions significant weight.").

The ALJ also afforded "significant weight" to Dr. Kwock's opinion, who "provided a medical opinion via interrogatories and after reviewing the entire medical record" but did not meet with Plaintiff in person. (Tr. at 41.) The ALJ gave Dr. Kwock's opinion "significant weight" because, while acknowledging that

> the opinion of a non-examining source is entitled to less weight than the opinion of a treating or examining source[,] . . . Dr. Kwock is an orthopedic expert with an awareness of all the evidence in the record, and an understanding of Social Security Disability programs and evidentiary requirements. Most importantly, his opinion is highly credible because it is well supported and based on the objective medical evidence which illustrates gaps in treatment and conservative pain management . . . .

(*Id.*) The ALJ's reliance on Dr. Kwock's opinion is also problematic. "The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)); *see also id.* ("[Medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.") (quoting *Minsky v. Apfel*, 65 F. Supp. 2d 124, 138 (2d Cir. 1999)).

Furthermore Dr. Kwock's review of the medical record was inherently deficient because the record did not include several significant diagnostic tests. "When an ALJ assesses a claimant's

8

alleged disability, he must 'affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Scott*, 2017 WL 1458773, at *2 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lopez v. Comm'r of Soc. Sec.*, 622 F. App'x 59, 60 (2d Cir. 2015) (summary order) ("Whether dealing with a pro se claimant or one represented by counsel, the ALJ must "develop [the claimant's] complete medical history."). Plaintiff's treating doctors relied on February 2013 and February 2015 MRIs of Plaintiff's neck, as well as a November 2013 MRI of Plaintiff's lower back to support their medical opinions. (Tr. at 294–95 (Dr. Goldstein's opinion describing results of Plaintiff's February 2013 and November 2013 MRIs); *id.* at 281–82 (Dr. Hearn's opinion describing results of Plaintiff's October 2013[7] and February 2015 MRIs); *id.* at 313 (Dr. Huish's opinion describing results of Plaintiff's February 2015, November 2013, and February 2013 MRIs).)

However, the only MRIs and CT scans in the record reviewed by Dr. Kwock are from 2011. (*Cf. id.* at 46–47.) Given that Dr. Kwock opined that Plaintiff's impairments did not meet the Listings for either his spine or lower extremity impairments (*id.* at 374), these 2013 and 2015 MRIs should have been provided to him, since they likely would have been relevant to his determination. (*See also id.* at 375 (Dr. Kwock's opinion noting that the evidence provided as to Plaintiff's neck impairment did not support a finding of radiculopathy).) *See Burgess*, 537 F.3d at 131 (noting that "the ALJ, given his duty to develop the record, should have requested that the MRI Report [relied upon by one of the plaintiff's examining doctors] be supplied"); *Roman*, 2012 WL 4566128, at *17 ("[T]he fact that the non-examining medical advisor did not have complete

---

[7] Though one of Plaintiff's treating physicians, Dr. Michael Hearns, states that Plaintiff's lower back MRI was performed in October 2013, the Court notes that another of Plaintiff's treating physicians, Dr. Mitchell Goldstein, who recommended the MRI, stated that the MRI was performed on November 7, 2013. (Tr. at 295.)

9

medical records of the claimant before him made the ALJ's improper reliance upon the advisor's testimony even more questionable.") (citing *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987)). As with Dr. Caiati's opinion, Dr. Kwock's conclusions, reached without the benefit of a physical examination of Plaintiff or a fully-developed medical record, are insufficient to support the ALJ's RFC determination. *Roman*, 2012 WL 4566128, at *16 ("The ALJ committed an additional and related error in assigning significant weight to the medical opinion of . . . a consultative medical expert who never had the occasion to examine or treat [the p]laintiff and relied solely upon the medical records found in the administrative record in forming a diagnosis.").

Therefore, given that neither the opinions of Dr. Caiati nor Dr. Kwock are sufficient to support the ALJ's RFC determination, the Court finds that remand is appropriate to allow the ALJ to fully develop the record and make a proper determination as to Plaintiff's RFC. *See Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand.") (collecting cases); *Grosso v. Colvin*, No. 15-CV-8709 (AT) (GWG), 2016 WL 4916968, at *9 (S.D.N.Y. Sept. 14, 2016) (holding that, even where "the ALJ made extensive efforts to evaluate the conflicts between [the opinion of the claimant's] treating physician . . . and the opinions of consultative examiners," remand was nevertheless appropriate "because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners"), *report and recommendation adopted*, 2016 WL 6269604 (S.D.N.Y. Oct. 25, 2016); *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

## II. Treating Doctors' Opinions

Related to the ALJ's improper reliance on the opinions of Dr. Caiati and Dr. Kwock is his decision to give "little weight" (Tr. at 39–40) to the medical opinions of Plaintiff's treating doctors, Drs. Mitchell Goldstein and Stephen Huish, who both specialize in orthopedics (*id.* at 293, 309), and Michael Hearns, who specializes in occupational medicine (*see id.* at 282). Typically, "[w]ith respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[8] *Burgess*, 537 F.3d at 128 (quotations, brackets, and citations omitted); *see also Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (describing "a consultative examiner's opinion" as distinct and separate from "a treating physician's opinion," the former of which may only be given greater weight than the latter "if the consultative examiner's conclusions are more consistent with the underlying medical evidence"). Furthermore,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations, quotations, and brackets omitted); *Burgess*, 537 F.3d at 129 ("In light of the ALJ's affirmative duty to develop the administrative

---

[8] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on October 18, 2013, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

11

record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.") (quotation omitted).

Here, the ALJ gave "little weight" to the opinions of Drs. Goldstein, Hearns, and Huish. (Tr. at 39–40.) The ALJ gave "little weight" to Dr. Goldstein's opinion because it was "inconsistent with the records as a whole including the claimant's attested[-]to level of activity"[9] (*id.* at 40), and similarly accorded little weight to both Drs. Hearns's and Huish's opinions because they were "inconsistent with the records as a whole, which shows improvement post microdiscectomy and no ongoing consistent treatment in 2012." (*Id.*) However, Plaintiff's treating doctors all relied on objective medical evidence in reaching their medical opinions. (*See, e.g.*, *id.* at 281–82 (Dr. Hearns's opinion); 294–95 (Dr. Goldstein's opinion); 313–14 (Dr. Huish's opinion).) In contrast, as discussed *supra*, Dr. Caiati did not rely on any objective medical evidence in the record and Dr. Kwock did not review all relevant objective medical evidence because of the ALJ's failure to adequately develop the record. In these circumstances, the ALJ's reliance on consultative examiner opinions, over the opinions of Plaintiff's treating doctors, was error. *See, e.g.*, *Pereira v. Astrue*, 279 F.R.D. 201, 206 (E.D.N.Y. 2010) ("Social Security regulations require that an ALJ give 'controlling weight' to the medical opinion of an applicant's treating physician so long as that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2))).

Additionally, the ALJ's reasons for rejecting the opinions of Plaintiff's treating doctors were improper. For example, the lack of "consistent treatment" (Tr. at 40) is not an adequate basis

---

[9] The ALJ also noted that he "provide[d] weight to the degree that it limit[ed] [Plaintiff] to the light exertional level and justified non-exertional limitations consistent with the above residual functional capacity." (Tr. at 40.)

to reject a medical opinion. *See Payne v. Astrue*, No. 10-CV-1565 (JCH), 2011 WL 2471288, at *7 (D. Conn. June 21, 2011) ("A doctor, clinician, or patient might choose conservative treatment for a variety of reasons, including the unavailability or the poor outcomes of other treatments. The ALJ . . . may not impose [his] . . . notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.") (quotations, alternations and citation omitted); *cf. Rodriguez v. Astrue*, No. 07-CV-534 (WHP) (MDH), 2009 WL 637154, at *22 (S.D.N.Y. Mar. 9, 2009) ("If the ALJ rejects the findings of a treating physician because, in part, he underestimates the duration of treatment, he commits an error of law because he improperly weighed the findings of the treating physician when making his decision."). Similarly, the ALJ's conclusion that Plaintiff's "attested[-]to level of activity" contradicted Dr. Goldstein's opinion (Tr. at 40) was improper. "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)); *see also Mills*, 2017 WL 1155782, at *10 ("Indeed, placing unwarranted reliance on Plaintiff's daily activities, in this case, would contravene the well[-]established principle that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (quotations and citations omitted).

Finally, the ALJ's conclusion that Drs. Hearns's and Huish's opinions were inconsistent with the record because the record "shows improvement post microdiscectomy" (Tr. at 40) is improper. First, given that there is no medical opinion in the record that finds that Plaintiff's impairment has improved post-surgery, it appears that the ALJ's conclusion rests on his own lay

interpretation of the medical evidence, which is error.[10] *See Smith v. Comm'r of Soc. Sec.*, No. 15-CV-1473 (JCF), 2016 WL 1388063, at *11 (S.D.N.Y. Mar. 23, 2016) ("[B]ecause the CT scan report simply documents objective findings without interpreting their practical implications, the ALJ's conclusion rests improperly on his lay assessment of the medical evidence."); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."). Second, the ALJ's focus on Plaintiff's improvement post microdiscectomy, assuming *arguendo* that the improvement was supported by the medical evidence, was inappropriate given that the microdiscectomy was only targeted at improving Plaintiff's symptoms in his neck and arm, when Plaintiff's complaints also included lower back and knee pain. *See Whittier v. Comm'r of Soc. Sec.*, No. 18-CV-4142 (PKC), 2019 WL 3451734, at *5 (E.D.N.Y. July 31, 2019) (noting that opinion of a doctor focusing on the plaintiff's knee problem was not sufficient evidence when the record indicated several other severe impairments).

The Court finds, therefore, that on remand the ALJ should endeavor to obtain enough information to determine whether the opinions of Drs. Goldstein, Hearns, and Huish—Plaintiff's treating doctors—are entitled to controlling weight. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d

---

[10] The ALJ relies on post-surgery records that note Plaintiff's "pain and weakness in his neck and shoulder described at a six out of ten in intensity." (Tr. at 38.) The ALJ also found it "notabl[e]" that "throughout the records [Plaintiff] denies neck pain." (*Id.*) However, Plaintiff's treating doctors all noted that "[d]espite the surgery, [Plaintiff] presented complain[ts] of ongoing neck pain with radiating pain as well as weakness with intermittent numbness and tingling in his right upper extremity." (*Id.* at 309 (Dr. Huish's opinion)); *see also id.* at 279 (Dr. Hearns noting that "[d]ue to his persistent [neck pain] complaints, [Plaintiff] ultimately underwent microdiscectomy of the cervical spine with minimal improvement"); *id.* at 293 (Dr. Goldstein noting that since Plaintiff's surgery, he "continued to experience pain in his neck which radiat[e]d into his right shoulder and down his arm with numbness into his right hand"); *cf. id.* at 325 (Dr. Caiati noting that Plaintiff "said it created pain" when rotating and extending cervical spine during examination).)

14

Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision.") (quotation and citation omitted). Although Drs. Goldstein's, Hearns's, and Huish's medical opinions were not "[themselves] determinative," their opinions were entitled to "controlling weight" so long as the ALJ had enough information to determine that they were "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

If, after soliciting the necessary information from Drs. Goldstein, Hearns, and Huish on remand, the ALJ determines that these doctors' opinions are still entitled to little weight, he must adduce evidence from a medical professional to support that conclusion. *See Greek*, 802 F.3d at 375. In doing so, the ALJ should keep in mind that he "may [only] give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015); *see also Suarez*, 102 F. Supp. 3d at 577 (noting that the ALJ is free to give greater weight to consultative medical examiners' opinions so long as he documents his rationale for finding the relevant standards met).

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2019
      Brooklyn, New York